Carr, J.
The first question is, to whom the surplus of the interest of the pecuniary fund of 2531 dollars belonged? to the testator’s sister Mary Rowlett ? to the residuary legatee, Martha ? or to the three children Archer, Polly and Martha, to the education of whom the testator directed the interest of the fund to be appropriated? The circuit superiour court decreed it to Mary Rowlett; and the decree has been sustained in argument here, on the ground, that the principal of the fund being directed to be divided among the seven nephews and nieces, at her death, amounted to a bequest to her by implication, of this surplus of interest accruing during her life; and many cases were cited to shew, that estates real and personal are given by implication, sometimes even to the disinheriting the heir. There can be no doubt of the doctrine; but it is equally clear, that an implication which will carry such estate, must be necessary, in order to effect the clear intent of the testator. Is it so here? I think not. To arrive at the conclusion, that *26 the testator intended that the surplus interest should go to his sister Mary, we must first ascertain, that he contemplated the existence of such surplus. He directs his money to be put out at interest, and the amount of the interesf to be applied to the education of the three children; the amount, that is, not a half, a fourth, or so much as others may choose to expend, but the whole interest is to be so applied. This is the clear meaning. The fund would yield about 150 dollars a year; only 50 dollars for each; and this ought all to have been expended on their education. The kind of education intended by the testator, should have been measured by the fund; and they should have been benefited in.the cultivation of their minds and manners, to the full amount pf the sum he had appropriated.
Seeing that the testator meant to appropriate the whole to their education, we cannot suppose he looked to any excess. If it be asked, how would the interest have gone, if the children had died soon .after the testator? I answer, this idea probably never occurred to him, and can furnish no ground of implication in favor of his sister, who being much older than these children, could hardly be looked to by him as likely to outlive them.
As to the argument drawn from fixing the division of the principal money at the death of his sister; that may be accounted for, I think, on other ground. The land and slaves are lent to his sister expressly for her life, and at her death the different tracts are disposed of, and the slaves are to be divided among her seven children. This then being the time when these other distributions would take place, it might have struck the testator, as a convenient period to divide this money also. There is nothing, I think, which shews any intent to give this surplus to his sister, strong enough to raise a bequest to her by implication.
Shall this go to the residuary legatee? This question is more doubtful. In Cambridge v. Rous, 8 Ves. 25. sir W. Grant says, “It has been long settled, that a residuary bequest of personal property (for it is otherwise as to real) carries not only every thing not disposed of, but' every thing *27 that in the event turns out not to be disposed of: not in consequence of any direct or expressed intention; for it may be argued in ail cases, that particular legacies are separated from the residue, and that the testator does not mean, that the residuary legatee shall take what is given from him: no; for he does not contemplate the case: the residuary legatee is to take only what is left: but that does not prevent the right of the residuary legatee. A presumption arises for the residuary legatee, against every one except the particular legatee. The testator is supposed to give it away from the residuary legatee, only for the sake of the particular legatee.” And again in Dawson v. Clark, 15 Ves. 41.6-7. the same distinguished judge says, “I have always understood, that a general residue of personal property comprehended every thing, not otherwise effectually disposed of by the will; and that there is no difference, whether a legacy falls into it by lapse, or as being void at law.” This, which seems to be the settled law on the subject, makes the case of a residuary legatee a strong one; and if it can be considered, that this surplus of interest is lapsed, undisposed of, or ineffectually disposed of, I agree, that, the residuary legatee must have it. That it is lapsed, was not contended; but the idea seemed to be, that it was no bequest of any thing to the three children, but merely a direction to the executor to apply so much of the interest, as he might choose, to their education, and that the surplus, if not given by implication to the mother, was undisposed of. The first, objection to this construction, is, that it holds out a strong temptation to neglect the education of the children; for here, the father, as executor and natural guardian, had control of this fund, and in right of his wife claims all the surplus interest. It is clear, then, that the less he expended on the education of the infants, the larger would bo the excess which he claimed. Hut look at the bequest itself: to my mind it is substantially this: My executor is to put to interest all my money, and it is to remain at interest till the death of my sister Mary; this interest, which will amount to about 1.50 dollars annually, I give to Archer. Polly and Martha Powlell, to be applied to *28 their education. I think it is impossible to deny that this is a fair and faithful expression of the testator’s meaning; and to what does it amount? Is it not a gift of this entire fund to these infants? Can one say, that the testator did not "Yyish. and intend, that every cent of'this interest should be laid out in their education? If the executor and guardian had so expended it, who could have charged him with going beyond his duty? But he has suffered their minds to remain uncultivated, while the fund accumulated, by which neglect of duty he has probably done them an irreparable injury: shall this very injury be the foundation of a claim to the fund? Can any body doubt, that, if the guardian or some Mend of these infants had filed a bill, and brought the subject before a court of equity, the court would have taken effectual steps for the application of this whole fund to their education and maintenance? And as that is now impossible, and rendered so by no fault of theirs, will not equity repair the injury, as far as it can, by giving them this money now, which the testator devoted exclusively to their benefit? Feeling this strongly to be the justice of the matter, I could not but think, that cases would be found to support it; and an examination has satisfied me that the fact is so. The rule which these cases establish, is this: where a legacy is given to a person to answer a particular-purpose, to which it becomes impossible to appropriate it, but from no fault in the legatee, he will be entitled to the money; and it rests on this principle, that the fund being appropriated to the benefit of the legatee, the mode in which it shall be applied is but a secondary object, and does not enter into the substance of the gift. Thus, in Barlow v. Grant, 1 Vern. 255. the bequest was of £ 30. to A. an infant, to bind him apprentice; A. died before attaining the proper age to be put out apprentice; and the question was, whether his executor was entitled to receive the money? It was decreed to him, on the ground that A. took a vested interest. In Nevill v. Nevill, 2 Vern. 431. the testator gave £ 500. to the eldest son of John Nevill (to be begotten) to place him out apprentice (or, as in the registrar’s book, “for *29 putting him forth either to law or merchandise”): John had a son born after the death of the testator, who claimed the legacy; though he was unfit to be placed out, as directed by the will, yet the legacy was ordered to be paid to him. So in Barton v. Cooke, 5 Ves. 462. testator directed his executors to apply £100. for the board and education of J. B. until he were fit to be put out apprentice, and that then they should pay the further sum of £ 100. with him, as an apprentice fee. It appeared, that J. B. attained the age of nineteen, but had not been placed out apprentice. The question was, whether he was entitled to the two legacies of £100? Lord Alvanley decreed them to him; adding, that if a legacy is given for the benefit of an infant in one way, and it cannot be so applied, it may be applied for his benefit in another way; and he put the case of a legacy given to put an infant into orders, and he should become a lunatic. Other cases are referred to in the books; 1 Rop. on Leg. 430. but these are enough to shew the rule.
I am, therefore, of opinion that this legacy vested equally in the three children, Archer, Polly and Martha; and that Archer dying, his portion went to his general distributees.
I am of opinion also, that the seven children took vested interests in the principal sum put out to interest during their mother’s life.
Cabell and Brooke, J. concurred. Decree reversed.